UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LIEN NGOC DO,

Petitioner,

v.

BRUCE SCOTT *et al.*,

Respondents.

Case No. C25-2187RSL

ORDER GRANTING HABEAS PETITION

This matter comes before the Court on petitioner's petition for writ of habeas corpus (Dkt. # 1). Having considered the motion; respondents' response (Dkt. # 13); petitioner's reply (Dkt. # 16); the related declarations (Dkts. # 10, 12, 14, 15, 17); and the record herein, the Court GRANTS petitioner's petition.

## I. Background

Petitioner Lien Ngoc Do is a native and citizen of Vietnam and an Amerasian refugee. Dkts. # 1 at ¶ 1, # 14 at ¶ 3. She has been told that she was born in Saigon, Vietnam, around December 31, 1970. Dkt. #12 at ¶ 3. Because she was not born in a hospital, there is no official record of her birth and she was not issued a birth certificate. *Id*. She has no family or siblings in Vietnam. *Id*. Her only family is in Washington State. *Id.* at ¶ 23. She was admitted to the United

States as an Amerasian refugee on April 2, 1991, and given lawful permanent resident status. Dkts. # 1 at ¶ 1, # 14 at ¶ 4.

Petitioner is now 55 years old and has worked as a cleaner at the Muckleshoot Casino for more than two decades. Dkt. # 1 at ¶¶ 18, 20. Her family resides in Tacoma, Washington. *Id.* at ¶ 19. She states that her husband is in poor health and that she is his primary caretaker. *Id.* Petitioner describes the events that led to her removal order as follows:

> On March 7, 1997, when Petitioner was 27 years old, she was convicted of assault of a child in the second degree and sentenced to thirty-one months confinement with credit for 230 days served. At that time, Ms. Do was a young, single mother of three children. She did not have any support or formal education and could not read or write. In 1996, when her son was 2 years old, she took him to a hospital in Tacoma with complaints of stomach pain. Unfamiliar with the healthcare and criminal legal systems, Ms. Do was entirely unprepared for what transpired next. A doctor at the hospital alleged that her son had been intentionally injured and reported Ms. Do to CPS. Ms. Do was charged with assault on a child and agreed to plead guilty without being advised by her lawyer about immigration consequences. Her children were placed into Child Protective Service's custody and were released back into Petitioner's custody after she completed her sentence and probation. Ms. Do describes this period away from her children as the worst time of her life.

*Id.* at ¶¶ 21, 22. After petitioner completed her sentence, she was transferred to Immigration and Naturalization Service ("INS") custody. *Id.* at ¶ 23. She was placed in removal proceedings on June 23, 1998, and ordered removed to Vietnam on Aug. 27, 1998. Dkt. # 14 at ¶¶ 6, 7. According to respondents, the removal order became administratively final on September 22, 1999. *Id*. at ¶ 10. On March 15, 2000, petitioner was released on an order of supervision pending her removal to Vietnam. *Id.* at ¶ 11. Petitioner's March 2000 release on supervision occurred "because there was not a significant likelihood of removal" to Vietnam. Dkt. # 13 at 6:4–5.

Respondents state that prior to her March 2000 release on supervision, petitioner had been detained after an administratively final removal order for "approximately five and a half months." *Id*. at 6:6–7. Petitioner calculates the time differently, stating that she had been detained after a final order of removal for "nine months and twenty-seven days." Dkt. # 16 at 5:7–17.

During the more than 25 years since petitioner's March 2000 release on supervision "she dutifully complied with the Order of Supervision, never missing a check in and only appearing late to a check in once." Dkt. # 1 at ¶ 27. "She has had no further interaction with the criminal legal system and has complied with her conditions of release since she was released from custody." *Id*. Then, on August 21, 2025, petitioner went to report to ICE "as I did every year," was taken into custody, and was "processed pending her removal to Vietnam." Dkts. # 12 at ¶ 18, # 14 at ¶ 12. As of the date of this order, petitioner's current detention has lasted for more than three months. Dkt. # 14 at ¶ 12. She is presently detained at the Northwest ICE Processing Center, "less than two miles away from her family's home, but an entire world apart." Dkt. # 18 at 2:13–14.

Respondents state that they are presently "working to effectuate Petitioner's removal to Vietnam" Dkt. # 13 at 2:5. Specifically, respondents state that they are "actively working to obtain a travel document to remove her to Vietnam" and have completed certain travel documents but have not yet submitted those documents to "government contacts in Vietnam." *Id.* at 8:13–18.

Petitioner's eldest child is a lawful permanent resident. Dkt. # 12 at ¶ 7. Her two younger children are U.S. citizens. *Id*. On November 29, 2025, petitioner's youngest son, also a U.S. citizen, died of suicide while petitioner was detained. *Id.*, Dkt. # 18-1 at 2. On Dec. 3, 2025, this Court issued a temporary restraining order ("TRO") ordering petitioner's immediate release based, in part, on (1) her showing of "immediate and irreparable injury" from the likely deprivation of her constitutional due process rights based on her prolonged cumulative detention and (2) the fact that, absent release, she would not be able to attend her son's funeral or grieve with her loved ones. Dkt. # 23. This Court also ordered that petitioner's release would be under the same conditions as those contained in her prior order of supervision. *Id*.

## II. Discussion

### A. Specific Relief Requested

In her habeas petition and reply, petitioner asks this Court to:

(1) Release petitioner based on respondents' "failure to adhere to their own regulations" and to the requirements of procedural due process when revoking petitioner's release and returning her to custody;

(2) Release petitioner because her re-detention is "unconstitutionally prolonged" in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001); and

(3) If this Court denies habeas relief to petitioner, consider petitioner's argument that prior to any third country removal she "must be provided with constitutionally and statutorily compliant notice and an opportunity to respond

> and contest that removal if she has a fear of persecution or torture in that country in reopened removal proceedings."

Dkt. # 1, 16.

**B. Petitioner's Request for Immediate Release Under *Zadvydas***

The Court will take petitioner's second form of requested relief first. In that request for relief, petitioner argues that she must be released because her detention has become "unconstitutionally prolonged" in violation of *Zadvydas*, 533 U.S. 678 (2001). Dkt. # 16 at 4. As the *Nguyen v. Scott* court recounted:

> In *Zadvydas*, the Supreme Court held that the [Immigration and Nationality Act] does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat[.]" *Id.* As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] ... [t]he Fifth Amendment's Due Process Clause[.]" *Id.* at 690, 121 S.Ct. 2491. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.*

No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *12 (W.D. Wash. Aug. 21, 2025).

The *Zadvydas* decision traces, in part, to this Court's 1999 decision to order a noncitizen released from custody on due process grounds. *See Kim Ho Ma v. I.N.S.*, 56 F. Supp. 2d 1165 (W.D. Wash. 1999) (involving a Cambodian refugee who was convicted of first-degree manslaughter, served two years of incarceration, and then was detained by the Immigration and Naturalization Service for over two years while awaiting removal); *Ma v. Reno*, 208 F.3d 815, 819 (9th Cir. 2000); *Zadvydas*, 533 U.S. 678, 685 (2001). *See also* C99-151RSL, Dkt. # 79. In

*Zadvydas*, the Supreme Court held that "for the sake of uniform administration in the federal courts," following a final removal order it is "presumptively reasonable" for the Government to detain a noncitizen for six months while the Government works to remove that person from the United States. *Zadvydas*, 533 U.S. 678 at 682, 701 (2001). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. This does not mean a noncitizen may not be held past the six-month period of presumptive reasonability. *Id*. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." But, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

**1. Petitioner Has Met Her Burden Under *Zadvydas***

Once the six-month period of "presumptively reasonable" detention has expired a petitioner seeking release from pre-removal detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 678 at 701 (2001). Here, the length of petitioner's post-removal detention prior to her March 2000 release on supervision is disputed. Respondents state that petitioner was detained after an administratively final removal order for "approximately five and a half months." *Id*. at 6:6–7. Petitioner calculates the time differently, stating that she had been detained after a final order of removal for "nine months and twenty-seven days." Dkt. # 16 at 5:7–17. The Court finds that this dispute is of no moment here, because when the Court adds to

either calculation the more than three months that petitioner was in re-detention between August 21, 2025 and the issuance of this Court's TRO on Dec. 3, 2025, petitioner's total time in detention is longer than the six-month period of "presumptively reasonable" detention established under *Zadvydas*, 533 U.S. 678, 710 (2001). *See Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *1–4, 13 (W.D. Wash. Aug. 21, 2025) (finding that "the clock" on *Zadvydas*'s six-month period of presumptive reasonability does not re-start with each successive detention). *See also Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369, at *3 (W.D. Wash. Nov. 17, 2025). Thus, in this matter the six-month period of "presumptively reasonable" detention under *Zadvydas* has expired. 533 U.S. 678 at 701 (2001). Petitioner must next show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Here, petitioner has submitted a declaration from a paralegal at the Federal Public Defender Office in the Western District of Washington stating that the local ICE detention center has "received a large influx of pre-1995 detainee[s] from Vietnam since about March 2025." Dkt. 16, Ex. E at ¶ 2. "I am aware of 30 pre-1995 Vietnamese detainees that ICE arrested since March," the declarant, Julie Valencia, states. *Id*. "To the best of my knowledge, none of these detainees have been deported to Vietnam." *Id*. In addition, petitioner has submitted a declaration filed in *Tran v. Scott*, 2:25-cv-01886-TMC, by an attorney who has specialized in cases involving Vietnamese citizens for nearly two decades. Dkt. 16, Ex. F at ¶ 5. The attorney, Tin Thanh Nguyen, states:

> This year, I have worked with or assisted on the cases of almost a hundred pre-1995 individuals for whom ICE has requested travel documents from Vietnam. I have yet to see Vietnam issue a travel document within 30 days or less. Rather, in my experience, it can take many months to get any answer from Vietnam about whether it will issue a travel document.

*Id*. at ¶ 7. Nguyen goes on to explain that for pre-1995 Vietnamese immigrants, "the process to decide whether to issues travel documents takes even longer." *Id*. at ¶ 9. Nguyen adds:

> Since May 30, 2025, I have been monitoring a disturbing trend of ICE re-detaining pre-1995 Vietnamese nationals, usually at their scheduled check in appointments, and detaining them without first requesting or securing their travel documents. These re-detentions are extremely concerning because ICE is detaining people without first establishing that removal is even possible in an individual case.

*Id*. at ¶ 10. Here, petitioner correctly points out that on this record, there is no evidence that respondents have submitted a request for travel documents to the Government of Vietnam. Dkt. # 16 at 6. *See* also Dkt. # 13 at 2:5, 8:13–18 (describing only an intent to submit a travel document request after internal ICE approval is received). In *Abubaka*, this Court found petitioner had shown that removal to Vietnam was not likely "in the reasonably foreseeable future" where the Government was making preparations to submit a request for travel documents but had not actually submitted a request. No. C25-1889RSL, 2025 WL 3204369, at *3–5 (W.D. Wash. Nov. 17, 2025). *See also Baltodano v. Bondi*, 2:25-cv-01958-RSL, Dkt. # 27 (W.D. Wash. Dec. 4, 2025) ("[N]o evidence that travel documents have even been requested. . . ."); *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) ("ICE is not permitted to hold [petitioner] indefinitely while it waits for travel documents from Vietnam."). Therefore,

petitioner has met her burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 678 at 701 (2001).

**2. Respondents Have Not Met Their Burden Under *Zadvydas***

Once petitioner has met her burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to respondents to "respond with evidence sufficient to rebut that showing." *Id*. Here, respondents anticipate receiving travel documents for petitioner "expeditiously" because, according to respondents, this fiscal year the Government of Vietnam has issued travel documents to "154 Vietnamese citizens who entered the United States before July 12, 1995." Dkt. # 13 at 8:18–21. Respondents view this "increased cooperation with the government of Vietnam" as evidence that "Petitioner's removal will likely occur in the reasonably foreseeable future." *Id.* at 9:1–2.

> Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur. *See, e.g.*, *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Chun Yat Ma*, 2012 WL 1432229, at *4–5; *Hoac*, 2025 WL 1993771, at *3.
>
> For example, in *Singh v. Gonzales*, the court found that ICE had not met its burden where it "merely assert[ed] that it has followed up on its request for travel documents" but could not provide any "substantive indication regarding how or when it expect[ed] to obtain the necessary travel document from the Indian government." 448 F. Supp. 2d at 1220 . . .
>
> More recently, in *Hoac v. Becerra*, . . . 2025 WL 1993771, at *3 . . . [t]he court noted that the "fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."

*Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *16–18 (W.D. Wash. Aug. 21, 2025). In *Nguyen*, as here, the Government pointed to the 154 pre-1995 Vietnamese immigrants it contended have obtained the necessary travel documents from Vietnam this fiscal year. *Id*. at *16. "At most," the *Nguyen* court found, the Government's evidence on this point established "that Vietnam is accepting more of its citizens for repatriation, including at least some citizens who arrived in the United States before 1995." *Id*. But the *Nguyen* court did not accept the Government's argument that "*some* increased deportations is enough to establish a significant likelihood that *any* Vietnamese citizen, including Petitioner, will be removed to Vietnam in the reasonably foreseeable future." *Id*. Rather, the *Nguyen* court called the Government's argument "unpersuasive." *Id*. While "these developments [cited by the Government] show there is at least some possibility that Vietnam will accept Petitioner at some point," the *Nguyen* court wrote, "that is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." *Id*. The same holds true here.

Respondents also point to "the many cases in this district alone where Vietnamese citizens have been removed on a relatively short timeframe once the travel document request has been submitted." *Id*. at 5–9. While all of the cases cited by respondents in support of this proposition were filed post-*Nguyen*, the total number of cases respondents cite is small: two. *Id*. In one of those cases, *Nguyen v. Bondi et al.*, 2:25-cv-01833-JNW, Dkts. # 12 at ¶ 13, # 18 at ¶ 3, petitioner was removed (and her pending habeas petition thereby mooted) about 36 days after "completed travel documents had been forwarded to

the necessary government contacts in Vietnam." In the second case, *Van Le v. Bondi et al.*, 2:25-cv-02084-JNW-SKV, Dkts. # 1 at 3:17–18 and 6:7–8, # 7, # 8, the petitioner is not a pre-1995 Vietnamese immigrant (having arrived in 1999) and the record in the matter does not show when a travel document request was submitted to the Government of Vietnam, making it impossible for this Court to calculate the time between the actual submission of any travel document request and petitioner's ultimate removal to Vietnam. Thus, the Court is left with one cited example in support of petitioner's contention, not "many" examples. This is unpersuasive.

Finally, and more fundamentally, respondents offer no evidence that they have actually submitted a request for travel documents to the Government of Vietnam. Dkt. # 16 at 6. *See* also Dkt. # 13 at 2:5, 8:13–18. Thus, respondents have failed to rebut petitioner's showing of "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 678 at 701 (2001). *See also Baltodano*, 2:25-cv-01958-RSL, Dkt. # 27 (W.D. Wash. Dec. 4, 2025); *Kamyab*, No. C25-389RSL, 2025 WL 2917522 (W.D. Wash. Oct. 14, 2025); *Abubaka*, No. C25-1889RSL, 2025 WL 3204369, at *3–5 (W.D. Wash. Nov. 17, 2025). As a result, the Court shall grant this habeas petition on the grounds that petitioner's detention has been unconstitutionally prolonged in violation of *Zadvydas*, 533 U.S. 678 (2001).

**C. Petitioner's Other Requested Relief**

Because the Court is granting petitioner's habeas petition pursuant to *Zadvydas*, it need not rule on petitioner's argument that her detention is improper because respondents failed to comply with the procedures outlined in 8 C.F.R. § 241.13(i)(3) when they re-detained her. Dkt.

# 16 at 2–4. In addition, petitioner states that her claims against third country removal are only ripe "if this Court denies relief to Petitioner," and this Court is granting petitioner relief under *Zadvydas*. Dkt. 16 at 9:20–22. Therefore, the Court does not address petitioner's non-*Zadvydas* claims.

**III. Conclusion**

For all the foregoing reasons, petitioner's petition for writ of habeas corpus (Dkt. # 1) is GRANTED; the TRO issued by this Court on Dec. 3, 2025, is DISSOLVED; and the Court ODERS that:

(1) Petitioner shall continue under the same conditions of her prior Order of Supervision; and

(2) Respondents may not re-detain petitioner unless:

a. She violates a condition of her Order of Supervision; or

b. The government (1) obtains a valid travel document to Vietnam for her, (2) provides the valid travel document to her and her counsel, (3) offers petitioner the opportunity to leave on her own within two months, and (4) petitioner does not leave. Under such circumstances, the government may be permitted to re-detain petitioner provided it has already made concrete arrangements for her to be put on a flight to Vietnam in the reasonably foreseeable future.

IT IS SO ORDERED.

DATED this 5th day of December, 2025.

Robert S. Lasnik
United States District Judge